UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OSAMA ABDELFATTAH,<br><br>                    Plaintiff,<br><br>           v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, et al.,<br><br>                    Defendants. | Civil Action 07-1842 (RCL) |

**MEMORANDUM OPINION**

In his *pro se* complaint, Osama Abdelfattah alleges that the Department of Homeland Security and several of its component agencies[1] have violated the Privacy Act of 1974, 5 U.S.C. § 552a, by compiling, maintaining, and failing to correct records about Mr. Abdelfattah that are stored in the Treasury Enforcement Communications System (TECS). But the TECS is exempt from the Privacy Act requirements that Mr. Abdelfattah would enforce through this suit. For that reason—and because the alternative grounds on which Mr. Abdelfattah would base his claims are no more availing—the Court will grant the Department's motion to dismiss the complaint.

**I. BACKGROUND**

A Jordanian national, Osama Abdelfattah came to the United States as a student in 1996. Am. Compl. ¶¶ 117–18. During his studies, Mr. Abdelfattah lived in a shared apartment with

---

[1] In addition to the Department of Homeland Security, the complaint names as defendants U.S. Citizenship and Immigration Services, U.S. Customs and Border Protection, and U.S. Immigration and Customs Enforcement, each of which is a component of the Department. The Court will therefore refer to the Department and its components collectively as "the Department."

several roommates.  For a period of time, one of those roommates was a man in whom federal authorities who would later take an interest.  Decl. of Osama Abdelfattah (Mar. 18, 2012), ¶¶ 9–13.[2]  Having shared an address with this man has been a cause of considerable trouble to Mr. Abdelfattah.

The trouble began in December of 2001, when Mr. Abdelfattah submitted an I-485 application to adjust his status to that of a permanent resident—that is, a green card holder—and an I-765 application for employment authorization.  Am. Compl. ¶ 121.  In early 2003, Mr. Abdelfattah called to inquire about the status of his I-765 application, and was told that he was undergoing a background check for security purposes.  *Id.* ¶ 123.  Over the course of 2003, Mr. Abdelfattah repeatedly visited immigration offices, waiting for lengthy periods each time, but did not secure an interim employment authorization document until late September of that year. *Id.* ¶¶ 124–29.  He received another interim employment authorization in May 2004.  *Id.* ¶ 134. Mr. Abdelfattah's I-485 application was approved in June 2004, and he was instructed to appear at a United States Customs and Immigration Services office to receive his physical green card. *Id.* ¶¶ 139–41.

---

[2] "Because the plaintiff submitted his affidavit[] to clarify his confusing . . . complaint, and because the Court has a special responsibility to allow ample opportunity for amending *pro se* complaints, see *Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 555 n. 2 (7th Cir. 1996), the Court will treat the plaintiff's affidavit[] as [an] amendment[] to his complaint, rather than [a] matter[] outside the pleadings. Consequently, the Court's consideration of the affidavit[] does not convert the defendants' Motion to Dismiss to a Motion for Summary Judgment." *Arnold v. Moore*, 980 F. Supp. 28, 33 (D.D.C. 1997).  Because the Court treats the plaintiff's affidavits and other exhibits in this way, it denies the plaintiff's apparent motion to amend his complaint, which does not add information beyond that contained in those documents.  *See* Pl.'s Resp. in Opp'n to Mot. to Dismiss or as an Alternative Amend My Compl. [Dkt. # 23].

While Mr. Abdelfattah was waiting at that office he was approached by five immigration officers and two dogs; one of the officers asked to speak with him. *Id.* ¶ 142. In a back room, the officer searched Mr. Abdelfattah, inspected his wallet, and began to question him. *Id.* ¶ 143. Two FBI agents arrived about half an hour later and joined in the questioning. *Id.* ¶ 144. One of the agents asked what Mr. Abdelfattah knew about one of his former roommates. Mr. Abdelfattah replied that they had lived in the same house in 1998 or 1999, after which time the roommate had moved to New Jersey and, Mr. Abdelfattah heard, ran into trouble with the law. *Id.* ¶ 145. He added that two friends had told him that they had been questioned by immigration authorities about their connections to the roommate. *Id.* Mr. Abdelfattah argued with an immigration officer, saying that his tenuous connection to this man did not justify the disruption in his life. *Id.* ¶ 146. The officer replied that the authorities' actions were justified. *Id.* The FBI agents asked Mr. Abdelfattah whether he would be willing to work as an informant for the Bureau. *Id.* ¶ 147. At the end of this interview, an immigration officer instructed Mr. Abdelfattah to proceed to the Alien Documentation, Identification, and Telecommunications System (ADIT) unit. *Id.* ¶ 149. The officer at the ADIT unit refused to stamp Mr. Abdelfattah's passport or return his employment authorization document, which Mr. Abdelfattah had surrendered earlier in the day. *Id.* ¶ 150. Since that time, Mr. Abdelfattah has continued to have difficulty obtaining routine immigration approvals, *id.* ¶¶ 152, 159, 163, 165–67, and has been contacted by FBI agents, *id.* ¶ 188, and immigration officials, who have visited his home and his workplace, *id.* ¶¶ 185–86.

In August 2004, Mr. Abdelfattah filed a Freedom of Information Act request for his I-485 application. *Id.* ¶ 150. He filed another FOIA request in August of 2006, this time requesting

"all records about [himself] that were held in any record system under the jurisdiction of [U.S. Immigration and Customs Enforcement], including Treasury Enforcement Communications System (TECS) records and investigation records." *Abdelfattah v. U.S. Immigration & Customs Enforcement*, 851 F. Supp. 2d 141, 143 (D.D.C. 2012).  Mr. Abdelfattah found that the TECS included records about him that contained past addresses, including the address that he briefly shared with his former roommate, Am. Compl. ¶ 11, information about driver's licenses that he had held, *id.* ¶¶ 74–79, "credit header" information, *id.* ¶¶ 63–71, and credit card numbers, *id.* ¶¶ 80–85.  Mr. Abdelfattah attributes the difficulty that he has faced in his interactions with immigration officials to the existence of these records.  *Id.* ¶¶ 192–96.  In this suit, Mr. Abdelfattah therefore seeks an order requiring the deletion of these TECS records, as well as damages under the Privacy Act for alleged statutory violations in compiling the records.  The Department has moved to dismiss the complaint for failure to include "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), for lack of subject matter jurisdiction under Rule 12(b)(1), and for failure to state a claim on which relief can be granted under Rule 12(b)(6).

## II.  LEGAL STANDARDS

### A.  Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a complaint, or a claim therein, for lack of subject-matter jurisdiction.  FED. R. CIV. P. 12(b)(1); *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction. . . . It is to be presumed that a cause lies outside this limited jurisdiction . . . .").  In response to such a motion, the plaintiff must show that her claims lie

within "the judicial Power of the United States," U.S. CONST. art. III, § 1, and that a federal statute grants the Court jurisdiction to hear those claims. *Micei Int'l v. Dep't of Commerce*, 613 F.3d 1147, 1151 (D.C. Cir. 2010) (citing *Mayor v. Cooper*, 73 U.S. 247, 252 (1868)); *see also Shuler v. United States*, 531 F.3d 930, 932 (D.C. Cir. 2008). If the plaintiff cannot establish both elements, the Court must dismiss the action. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (citing *Ex parte McCardle*, 7 U.S. 506, 514 (1868)). The Court will, however, "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). When resolving a motion made under Rule 12(b)(1), a court may consider material beyond the allegations in the plaintiff's complaint. *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253–54 (D.C. Cir. 2005).

### B. Short and Plain Statement

Rule 8(a)(2) provides that any pleading asserting a claim for relief must include "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). As the Second Circuit has explained:

> The statement should be plain because the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial. The statement should be short because '[u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage.'

*Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (quoting 5 CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE & PROCEDURE § 1281, at 365 (1969)) (citations omitted); *see also Ciralsky v. CIA*, 355 F.3d 661, 669 (D.C. Cir. 2004) (quoting *Salahuddin*, 861 F.2d at

42 (quoting 5 WRIGHT & MILLER § 1281, at 365)); *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977) ("The purpose of [Rule 8] is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether res judicata is applicable."). Moreover, Rule 8(d)(1) requires the allegations supporting that claim to be "simple, concise, and direct." FED. R. CIV. P. 8(d)(1). "Taken together," these rules "underscore the emphasis placed on clarity and brevity by the federal pleading rules." *Ciralsky*, 355 F.3d at 669 (quoting *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 702 (3d Cir. 1996)) (quoting 5 WRIGHT & MILLER § 1217, at 169 (2d ed. 1990)) (referring to a superseded version of Rule 8). Their enforcement "is largely a matter for the trial court's discretion; Rule 41(b) authorizes the court to dismiss either a claim or an action because of the plaintiff's failure to comply with the Federal Rules." *Id.* (citation omitted).

### C. Failure to State a Claim

A motion to dismiss is appropriate when the complaint fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Such a failure occurs when the complaint is so factually deficient that the plaintiff's claim for relief is not plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Asking for plausible grounds to infer [a right to relief] does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the right to relief]." *Id.* at 556. Though facts in a complaint need not be detailed, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept all factual statements as true when deciding a Rule 12(b)(6) motion to dismiss. *Id.* at 678. However, conclusory legal allegations devoid of any factual

support do not enjoy the same assumption of truth. *Id.* at 679. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erikson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). Nevertheless, a *pro se* plaintiff's complaint "must present a claim on which the Court can grant relief." *Utterback v. Geithner*, 754 F. Supp. 2d 52, 54 (D.D.C. 2010) (quoting *Chandler v. Roche*, 215 F. Supp. 2d 166, 168 (D.D.C. 2002)).

### III.  ANALYSIS

#### A.  Plaintiff's Claims

Construing Mr. Abdelfattah's inartfully pleaded complaint liberally, as it must, the Court can discern four distinct sets of claims. The first set alleges that the Department violated the Privacy Act by failing to "maintain in its records only such information about an individual as is relevant and necessary to accomplish a purpose of the agency required to be accomplished by statute or by executive order of the President." 5 U.S.C. § 552a(e)(1). In particular, Mr. Abdelfattah objects to the fact that information about his driver's licenses and credit cards, as well as credit header information, are stored in the TECS. The second set of claims alleges that this information was not collected by the Department "to the greatest extent practicable directly from" Mr. Abdelfattah, *id.* § 552a(e)(2), also in violation of the Privacy Act. The third set of claims alleges that the Department and unnamed Department officials violated the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.*, Right to Financial Privacy Act, 12 U.S.C. §§ 3401 *et seq.*, and Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801 *et seq.*, by using Mr. Abdelfattah's social

security number to obtain his credit header information, and by obtaining his credit card number, and that unnamed private corporations violated those statutes by providing that information to the Department.  These three sets of claims are all articulated in Part A of the complaint.

In Part B, the complaint alleges that the Department has unlawfully denied Mr. Abdelfattah's request to amend or delete his TECS records.  The complaint alleges that, by so refusing, the Department violated the Privacy Act, the Administrative Procedure Act, the Declaratory Judgment Act, the Fourth Amendment, the Fifth Amendment, and 42 U.S.C. § 1983.[3]

The Department has moved to dismiss the Privacy Act claims under Federal Rule of Civil Procedure 12(b)(1) for failure to exhaust administrative remedies, and to dismiss all claims under Rule 12(b)(6) for failure to state a claim on which relief can be granted.  In the alternative, the Department moves to dismiss the complaint for failure to satisfy the Rule 8 requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).

**B.  Privacy Act Claims**

The Privacy Act, 5 U.S.C. § 552a, "gives agencies detailed instructions for managing their records and provides for various sorts of civil relief to individuals aggrieved by failures on the Government's part to comply with the requirements."  *Doe v. Chao*, 540 U.S. 614, 618 (2004).  Among these requirements, each agency must "maintain in its records only such

---

[3] The Department suggests that the complaint may also allege constitutional torts against the Department and federal officers for their conduct in questioning Mr. Abdelfattah.  But the complaint, even read liberally, contains no such allegation: rather, it is focused throughout on the existence of the disputed records and the manner in which they were compiled and maintained.

information about an individual as is relevant and necessary to accomplish a purpose of the agency required to be accomplished by statute or by executive order of the President" and "collect information to the greatest extent practicable directly from the subject individual when the information may result in adverse determinations about an individual's rights, benefits, and privileges under Federal programs."  5 U.S.C. § 552a(e)(1), (2).  As the D.C. Circuit recently explained:

> Privacy Act § 552a(e)(5) requires agencies to ensure that any records used in "making any determination about any individual" are "maintain[ed] . . . with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination."  5 U.S.C. § 552a(e)(5). Section 552a(d) requires agencies to entertain requests for amendment of records that are not "accurate, relevant, timely, or complete."  *Id.* § 552a(d)(2).  If an agency rejects a request for amendment, the subject of the contested record can bring suit in federal court and obtain de novo consideration of whether amendment is warranted. *Id.* § 552a(g)(1)(A), (g)(2)(A).  If the court so finds, it "may order the agency to amend the individual's record." *Id.* § 552a(g)(2)(A); see generally *Doe v. United States*, 821 F.2d 694, 697 & n. 8 (D.C. Cir. 1987) (en banc).

*Skinner v. U.S. Dep't of Justice*, 584 F.3d 1093, 1096 (2009).  An individual may also sue if an agency "fails to comply with any other provision of [the Privacy Act], or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual."  5 U.S.C. § 552a(g)(1)(D).  Individuals who prevail in such suits are entitled to recover at least $1,000, plus costs and attorney fees.  *Id.* § 552a(g)(4).

A plaintiff cannot bring a suit alleging that an agency's record is not "accurate, relevant, timely, or complete," 5 U.S.C. § 552a(d)(2), unless he has first requested that the agency correct its record and the agency has refused to do so.  *Skinner*, 584 F.3d at 1096; *Hill v. U.S. Air Force*, 795 F.2d 1067, 1069 (D.C. Cir. 1986) (per curiam).  Mr. Abdelfattah alleges that he has submitted such a request to the Department, Am. Compl. ¶ 212; the Department has submitted an

9

affidavit stating that it has no record of the request. Decl. of Ryan Law (Jan. 26, 2012), at ¶ 5. But the Court need not resolve that dispute between the parties, because Mr. Abdelfattah's claims have another jurisdictional defect: TECS records are exempt from all of the Privacy Act requirements that he seeks to enforce.

"[T]he Privacy Act . . . permits agencies to exempt certain of their systems of records from many of the obligations it imposes." *Skinner*, 584 F.3d at 1096 (citing 5 U.S.C. § 552a(j)). The Department of the Treasury has exempted the TECS from all of the Privacy Act requirements that Mr. Abdelfattah would enforce in this suit, as well as the jurisdictional provision that would allow him to bring it. *See* 31 C.F.R. § 1.36(c)(1)(iv), (2) (exempting TECS from the requirements of 5 U.S.C. §§ 552a(d)(1)–(4) , 552a(e)(1)–(3), (5), 552a(g)). The Court will therefore grant the Department of Homeland Security's motion to dismiss Mr. Abdelfattah's Privacy Act claims—that is, the first and second sets of claims, which allege violations of 5 U.S.C. § 552a(e)(1) and (2), and the portion of the fourth set of claims that alleges violations of 5 U.S.C. § 552a(e)(5)—for lack of jurisdiction.[4]

---

[4] In his second set of claims, Mr. Abdelfattah also appears to allege that unnamed private corporations violated the Privacy Act by providing the Department with certain information. Although those corporations have not appeared in this action, the Court will dismiss the Privacy Act claims against them *sua sponte*. *See Scott v. United States*, 275 Fed. App'x 21 (D.C. Cir. 2008) (per curiam) (holding that a "district court may dismiss a complaint *sua sponte* for failure to state a claim if it is 'patently obvious' that the plaintiff cannot prevail") (quoting *Baker v. Director, U.S. Parole Comm'n*, 916 F.2d 725, 727 (D.C. Cir. 1990) (per curiam)). The Privacy Act applies only to federal agencies; it does not regulate private corporations. *See Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006) (noting that the Privacy Act "concern[s] the obligations of agencies"). Nor does the Privacy Act provide a cause of action against agency officials. *See id.* The Court will therefore dismiss all Privacy Act claims against the unnamed officials.

**C. Other Claims for the Amendment of TECS Records**

The complaint alleges many alternative grounds for Mr. Abdelfattah's core claim that the Department's failure to amend or delete its TECS records was unlawful, but none provides a basis for relief. The constitutional claims for failure to amend the records will be dismissed because "constitutional claims . . . are encompassed within the remedial scheme of the Privacy Act," and so cannot be brought separately when Privacy Act claims are available. *Chung v. U.S. Dep't of Justice*, 333 F.3d 273, 274 (D.C. Cir. 2003). In the alternative, if that rule applies only to constitutional claims that could actually be brought under the Privacy Act and not to those that have been removed from its coverage by the use of exemptions, then the Court would dismiss the constitutional claims for failure to include factual allegations sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Read in the light most favorable to the plaintiff, the complaint merely alleges that the Department has accurately recorded certain facts in the TECS: that Mr. Abdelfattah once lived at a certain address, that he has had certain credit cards and driver's licenses. On the facts alleged, Mr. Abdelfattah cannot state a claim that the Department's refusal to remove this accurate information violated the constitutional guarantees of due process, equal protection, or freedom from unreasonable searches and seizures. The Court will therefore dismiss his constitutional claims, as well as the claims brought under 42 U.S.C. § 1983, which require an underlying constitutional violation by an official of a state or the District of Columbia.

Mr. Abdelfattah cannot state a claim that the failure to amend the records was "not in accordance with law" and therefore in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), unless he can identify some source of law that would make it so, which he has not.

Finally, the Declaratory Judgment Act, which allows a federal court to "declare the rights and other legal relations of any interested party seeking such declaration," 28 U.S.C. § 2201(a), does not itself provide those rights. Because Mr. Abdelfattah has not stated a plausible claim that he suffered any legal wrong from the refusal of the Department to amend its TECS records, the Court will dismiss his Declaratory Judgment Act claims as well.

### D. Claims under the Fair Credit Reporting, Right to Financial Privacy, and Gramm-Leach-Bliley Acts

The Court turns to Mr. Abdelfattah's third set of claims, in which he alleges that the Department and unnamed Department officials violated the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.*, the Right to Financial Privacy Act, 12 U.S.C. §§ 3401 *et seq.*, and the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801 *et seq.*, by using his social security number to obtain his credit header information, and by obtaining his credit card number, and that unnamed private corporations violated those statutes by providing that information to the Department.

The Fair Credit Reporting Act "does not regulate the dissemination of information that is not contained in a 'consumer report.'" *Individual Reference Servs. Group, Inc. v. FTC*, 145 F. Supp. 2d 6, 17 (D.D.C. 2001). A "consumer report," in turn, must be a "written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living." 15 U.S.C. § 1681a(d)(1). The Federal Trade Commission has found that credit header information—which usually consists of a consumer's name, address, social security number, and phone number—"does not bear on creditworthiness, credit capacity, credit standing, character, general reputation, personal characteristics, or mode of living, unless such terms are given an impermissibly broad meaning." *Individual Reference Servs. Group*, 145

F. Supp. 2d at 17 (quoting *In re Trans Union Corp.*, FTC Docket No. 9255, Feb. 10, 2000, at 30). This Court agrees. And the same is true of a bare credit card number, the other piece of information at issue here. The Court will therefore dismiss all claims brought under the Fair Credit Reporting Act for failure to state a claim on which relief can be granted.

The Right to Financial Privacy Act similarly regulates only "financial records," which are "information known to have been derived from, any record held by a financial institution pertaining to a customer's relationship with the financial institution." 12 U.S.C. § 3401(2). As the Fourth Circuit has explained, the Act limits both "the circumstances under which [such] records may be disclosed to governmental authorities []by financial institutions," and "the circumstances under which governmental authorities may obtain *access* to [such] records from the financial institutions." *Tucker v. Waddell*, 83 F.3d 688, 692 (4th Cir. 1996) (citing 12 U.S.C. §§ 3403 and 3402, respectively). "Customers aggrieved by the improper disclosure of their records have a private right of action against the governmental authority that *obtained* the records and the financial institution that *disclosed* the records." *Id.* (citing 12 U.S.C. § 3417(a)). Mr. Abdelfattah attempts to state a claim under the Right to Financial Privacy Act by alleging that unnamed corporations provided his credit card number and credit header information to the Department, when neither the access nor the disclosure was properly authorized. That is the full extent of the allegation: the complaint does not identify the financial institution that provided the allegedly unauthorized disclosure, nor how nor when nor why any financial records were disclosed. This deficiency is especially troubling where, as here, the Department could have obtained the information from another source—such as a credit reporting agency, which is not a "financial institution" under the Right to Financial Privacy Act. *See* 12 U.S.C. § 3401(1). In

support of these claims, Mr. Abdelfattah has offered no more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  Because the complaint's factual allegations are not "enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, the Court will dismiss the claims brought under the Right to Financial Privacy Act for failure to state a claim.

Finally, the Court notes that "[n]o private right of action exists for an alleged violation of the G[ramm-]L[each-]B[liley ]A[ct]."  *Dunmire v. Morgan Stanley DW, Inc.*, 475 F.3d 956, 960 (8th Cir. 2007).  The Court will therefore dismiss all claims brought under that Act.[5]

### IV.  CONCLUSION

As the above discussion makes clear, Mr. Abdelfattah's suit must be dismissed.  Although he alleges—and the Court does not question—that he has suffered and continues to suffer difficulties in his encounters with immigration authorities through no fault of his own, that is not enough to prevail.  The Court will therefore dismiss his complaint.

Royce C. Lamberth  
Chief Judge  
United States District Court

Date: September 27, 2012

---

[5] The Court also dismisses the claims brought against the unnamed private corporations under the Fair Credit Reporting Act, Right to Financial Privacy Act, and Gramm-Leach-Bliley Act for the reasons stated above, because it is "patently obvious" that those claims cannot succeed on the facts alleged.  *See Baker*, 916 F.2d at 727.